J. Sterling Rockefeller v. Commissioner.
Rockefeller v. Commissioner
Docket No. 107019.
United States Tax Court
1942 Tax Ct. Memo LEXIS 77; 1 T.C.M. (CCH) 128; T.C.M. (RIA) 42607; November 24, 1942
*77 Scott Scammell, Esq., 115 Broadway, New York City, and John Hall Forbes, Esq., for the petitioner. F. S. Gettle, Esq., for the respondent. DISNEY
Memorandum Findings of Fact and Opinion DISNEY, J.: This proceeding involves a deficiency in income tax for the calendar year 1937 in the amount of $32,733.96. The sole issue for decision is whether the petitioner was entitled to deduct the sum of $76,900 as a debt ascertained to be worthless and charged off within the taxable year. The proceeding has been submitted upon evidence adduced at the hearing and upon stipulations of facts which we adopt and incorporate herein by reference. From the whole record we make the following findings of fact. Findings of Fact The petitioner, an individual, filed his income tax return for the calendar year 1937 with the collector of internal revenue for the second district of New York. Garrison Fire Detecting System, Inc., hereinafter sometimes referred to as the Delaware corporation, was incorporated under the laws of that state in June 1925. Its principal objects were the development, manufacture and sale of automatic fire detection and fire extinguishing devices, and the acquisition of letters patent *78 covering inventions and processes useful to it in its business. Its operations were not financially successful, and by December 31, 1929, its accumulated operating deficit exceeded $326,000. It eliminated the item from its books by transferring it to its patent rights, development and good will account, but it continued to operate at a loss. As of December 31, 1930, it had a book deficit of over $77,000. Shortly thereafter the stockholders and directors deeming it advisable to borrow money for corporate purposes, authorized the issuance of the aggregate amount of $125,000 of 6 per cent secured debentures, to be dated May 1, 1931, and to mature in 10 years. Accordingly, the corporation under date of April 15, 1931, entered into an agreement with Empire Trust Company, a New York corporation, by the terms of which the former transferred certain letters patent held by it as licensee of the patentee, and agreed to transfer such letters patent as it might subsequently acquire, to the latter, in trust as security for the debentures. The right to operate, and to license others to operate, under the patents was reserved to the Delaware corporation. Early in 1931 the petitioner learned of *79 the device covered by the Delaware corporation's patents. Its operation was demonstrated to him, and, believing in the worth of the product, he purchased $74,000 face amount of the debentures issued under the above-mentioned agreement at a cost of $74,000. Directly after his purchase, he was elected a director of the corporation. The operations of the corporation continued unsuccessful, and by December 31, 1932, it had an accumulated book deficit of over $93,000. At about that time it granted an exclusive license to operate under the patents to Garrison Fire Detecting System, Inc., a New York corporation, hereinafter referred to as Garrison of New York. During 1932 and 1933 the petitioner invested over $26,000 in stock of Garrison of New York and was elected a director. Under the license agreement, Garrison of New York was obligated to make semi-annual payments of $27,500 to the Delaware corporation, by satisfying Delaware's obligations to the trustee under the debenture agreement, and by rendering the surplus, if any, to the Delaware corporation. In February 1933, the petitioner purchased an additional $1,000 of the debentures of the Delaware corporation at a cost to him of $400. *80 In January 1935, he assumed and paid its indebtedness of $2,500, in consideration of the company's agreement to issue to him a further $3,000 face amount of its debentures. These last debentures were never issued. In October 1933, Garrison Engineering Corporation, hereinafter referred to as Engineering of New York, was incorporated under the laws of the State of New York. The petitioner also advanced funds for this company. It too operated under a license from, and was obligated to make certain royalty payments to, the Delaware corporation in respect of products manufactured under the license. It also held an assignment of license from Charles R. Johnson covering certain other patents and patent rights, under which it manufactured a fire extinguishing powder and other fire extinguishing devices. Petitioner and other persons interested in the Garrison companies felt that the additional products would prove to be a valuable adjunct to manufacture under the original patents. The Delaware corporation enjoyed but little better financial success after the granting of the license agreements to the two New York corporations than it had before. It sustained operating losses in the amounts *81 of $11,864.72 in 1933, $26,106.83 in 1934, and $8,844.85 in 1935. The petitioner, Jere H. Wheelwright and one Lobert, all of whom had become interested in and had purchased debentures at the time of issue, felt that the company's reverses had been the result of faulty management of the company and its licensees. They still believed in the merit of the product, but felt that they should have actual control of the manufacture. Accordingly, Garrison Engineering Corporation, hereinafter referred to as Engineering of Massachusetts, was incorporated on October 9, 1935, under the laws of the Commonwealth of Massachusetts. The petitioner, Wheelwright and Charles R. Johnson were its sole stockholders. Johnson held the office of president and general manager. The amount of petitioner's investment in stock, all made in the period from October 27, 1935, to January 14, 1936, was $45,000. During the months from January 1936 to July 1936 he loaned the company upwards of $25,000. As had the two New York corporations, Engineering of Massachusetts, operated under license from the Delaware corporation, and, as they had been, it was obligated to make certain royalty payments to the Delaware corporation. *82 In addition to operations under the license, it manufactured the same fire extinguishing powder as had Engineering of New York, and also fire pumpers and trucks. After sometime in the early part of 1934, the Delaware corporation received no royalty payments whatever from any of its licensees. By June or July of 1936, petitioner and Wheelwright had become dissatisfied with Johnson's management of Engineering of Massachusetts. At that time, believing that Johnson was improperly withholding information concerning corporate affairs, petitioner joined in an application requesting the appointment of a receiver for the corporation. A receiver was appointed and operations were continued by him until sometime in 1938 when the corporation was liquidated. It was the last of the corporations to operate under license from the Delaware corporation. In his income tax return for 1936, the petitioner deducted from gross income the sum of $45,000 representing his investment in stock in Engineering of Massachusetts as having become worthless in 1936. On May 4, 1936, the Delaware corporation caused to be filed with the United States District Court for the Southern District of New York its petition *83 for reorganization under Section 77B of the Bankruptcy Act. In Schedule A, attached to the petition, the assets, consisting solely of its patents, patent rights and good will, were valued at $255,972.89. In paragraph 4 (d) of the petition proper, under the heading "Financial condition," appeared the following recital: "No cash or securities of any nature in possession; there is outstanding a contract with Garrison Engineering Corporation (Mass.) the value of which is uncertain." On May 12, 1936, the court ordered that a hearing be held on the petition. On September 17, 1936, the petitioner herein filed answer and objections to the petition for reorganization in which he asserted that the assets listed in the petition were "grossly over valued," that the debtor was "hopelessly insolvent," and requested reference to a special master to determine the question of solvency. On November 6, 1936, Richard D. Kaul, vice president and secretary of the Delaware corporation, and the same officer who executed the petition for reorganization on behalf of the corporation, filed an affidavit, and a certified copy of a resolution of the board of directors adopted on November 2, 1936. The general purport *84 of the two documents was that the board had concluded that the assets of the corporation had been given an excessive valuation in the petition; that upon consideration it had determined that their fair market value was not more than $10,000; and that it would be to the best interest of the corporation to be liquidated and dissolved. On November 6, 1936, the court, reciting petitioner's consent, ordered that the corporation be liquidated, and referred the administration of its estate to a referee. A prior order of reference to a special master for determination of the question of solvency was vacated by an order dated November 30, 1936. Subsequently, the petitioner filed proof of claim of an aggregate sum of $106,351.80 representing the face amount of the debentures issued to him, those not issued but to which he was entitled, and unpaid interest thereon. On April 15, 1937, the bankruptcy referee offered the patents and patent applications for sale, with the understanding that certain of the patents which had been acquired by the corporation subsequent to the execution of the debenture agreement but had not been transferred to the trustee thereunder, as well as those which had been *85 so transferred, were subject to the lien of that agreement. The representative of some of the debenture holders, of whom the petitioner in this proceeding was one, was the sole bidder. Acceptance of his offer of $100 being recommended by the bankruptcy trustee, the referee ordered sale and the same was consummated on April 17, 1937. The proceeds were insufficient to pay the expenses of the proceedings. At some time subsequent to the bankruptcy sale, the petitioner was advised by his attorney that the debentures should be treated as having become worthless in 1937, and that deduction of their cost should be made from his gross income for that year. Petitioner kept no list of investments in his personal books, but on December 31, 1937, he directed his confidential bookkeeper and accountant to enter $77,000 as cost of acquisition of the debentures in question and to charge off the same as worthless. An account was set up for the debentures, and the appropriate entries were simultaneously made, all on that day. Accrued interest on the debentures was payable semi-annually. No interest was ever paid to the petitioner, although scrip in lieu of some of the interest payments had been issued *86 to and received by him. Petitioner reported his gross income for 1936 as $103,477.89, against which he claimed deductions aggregating $53,322.03. His 1937 return showed gross income of $116,684.58. Total deductions were claimed in the sum of $87,592.12, of which $77,000 was asserted to be the cost of the debentures, the charge-off of which is here in issue. Petitioner now concedes that their aggregate cost to him was actually only $76,900. Opinion The question for our determination is whether the respondent erred in denying the petitioner's claim of deduction of $76,900 as a debt which he ascertained to be worthless and charged off in 1937. The burden is on the petitioner to show the alleged error. After examination of the whole record and the authorities cited in support of the respective contentions, we come to the conclusion that such burden has not been met by the petitioner. He was and had since 1931 been a director of Garrison Fire Detecting System, Inc., a Delaware corporation, the debentures of which (issued in 1931) form the subject of the deduction taken for worthless debt. He held approximately $76,900 out of $125,000 of such indentures. The company had a consistent *87 record of loss, its operating losses in 1933, 1934 and 1935 being respectively, in round numbers, $11,000, $26,000 and $8,000. The petitioner never at any time received any cash interest on his bonds. In March 1936, the company filed a petition for reorganization under Section 77B of the Bankruptcy Act. Therein assets were scheduled of approximately $255,000, consisting solely of patents, patent rights and good will, and it was recited that no cash or securities of any nature were in possession; that it had a contract, the value of which was uncertain. In September 1936 the petitioner objected to reorganization, alleging that the assets were grossly overvalued and that the company was hopelessly insolvent and asked reference to determine the question of solvency. On November 6, 1936, there was filed in the proceedings an affidavit and resolution of the company's board of directors passed November 2, 1936, to the effect, in substance, that there had been overvaluation of assets, that they were not over $10,000; that the liabilities were about $177,000; that the company's attorney was retained to request that the plan of reorganization be withdrawn, and liquidation and dissolution of *88 the company be ordered. On November 6, 1936, the Court ordered liquidation. The order recited the consent of the petitioner. On November 30, 1936, the Court vacated its prior order of reference on the question of solvency. The patents and patent applications owned by the company were offered for sale, and were purchased for $100 by a representative of debenture holders, including the petitioner. The proceeds of the sale consummated on April 17, 1937, were not sufficient to pay the expenses of the proceedings. Since 1934 the company received no royalty payments from any of its licensees. One licensee, on application joined in by the petitioner, had been placed in receivership in 1936 and in that year the petitioner deducted from gross income $45,000 invested therein, as having become worthless. Under all of the facts, we are unable to reconcile the petitioner's statement and representation to the Court in 1936 that the company was hopelessly insolvent with his contention here that the debentures of such company were ascertained to be worthless in 1937. It was his burden to show erroneous the respondent's determination, in effect, that he did not ascertain the worthlessness in 1936. *89 We find in the record no proof that he had knowledge of facts leading to the belief that the assets were sufficient to pay anything upon the debentures held by him. That they were in fact then worthless can not be doubted under the record. We think it clear that the petitioner has failed to show ascertainment of worthlessness in 1937, and find no error shown in the Commissioner's determination. Decision will be entered under Rule 50.